**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**PETER J. MESSITTE**                                               **6500 CHERRYWOOD LANE**
**UNITED STATES DISTRICT JUDGE**                            **GREENBELT, MARYLAND  20770**
                                                                                **301-344-0632**

<u>M E M O R A N D U M</u>

TO:              Counsel of Record

FROM:        Judge Peter J. Messitte

RE:              <u>LaClair v. Suburban Hospital, Inc., et al.</u>
                     Civil Case No. 10-896

DATE:          April 24, 2012

                                                   ******

Plaintiffs Cameron LaClair and Mary LaClair filed this negligence action against Defendant
Suburban Hospital, Inc. ("Suburban") for injuries sustained while Mr. LaClair was under
Suburban's care.  Before the Court is Plaintiffs' Motion to Enforce Settlement [Paper No. 62].
For the following reasons, the Court **GRANTS** the Motion and Court awards Plaintiffs
$21,690.55 in pre-judgment interest and $82.27 in post-judgment interest.  Insofar as the Motion
requests further relief, those matters have already been decided by the Court and will be deemed
**MOOT**.

Prior to this litigation, Plaintiffs sued certain physical therapists for injuries allegedly caused by
their negligence, injuries which accounted for Mr. LaClair's presence at Suburban.

In the present case, in May 2011, the parties negotiated a settlement with the assistance of former
District of Columbia Superior Court Judge Nan Shuker.  On May 31, Judge Shuker set forth the
terms of the agreement in an e-mail to the parties, which reads as follows:

> (1) $650,000 to be paid to the LaClairs in the event that Judge Messitte rules in
>      favor of the defense on the joint/successive tortfeasor credit issue;
> (2) $1,250,000 to be paid to the LaClairs in the event that Judge Messitte rules in
>      the LaClairs' favor on the joint/successive tortfeasor credit issue;
> (3) Both sides will have the right to appeal from Judge Messitte's ruling . . . .

> I have also spoken with [Plaintiffs' counsel] and he has requested that the agreement
> include the provision that the minimum payment of $650,000 be paid to the LaClairs
> within two weeks from today's date.

> Finally, the above settlement provisions are contingent upon counsel for the parties
> agreeing to the proper wording and scope of the issues to be submitted to Judge Messitte
> on the joint tortfeasor credit issue.

1

On June 1, 2011, Suburban's counsel responded to the e-mail, stating the he would check with his client to see if he could "get the $650,000 in two weeks." "Otherwise," he continued, "the below [e-mail] accurately reflects our agreement."

On June 16, 2011, the parties appeared before the undersigned to argue the issue of whether Suburban was jointly liable for Plaintiffs' injuries, hence joint tortfeasors with the physical therapy defendants in the previous suit, or whether Suburban's negligence was a superseding cause of those injuries. A disagreement arose over how the "joint/successive tortfeasor" issue would be presented to the Court—either on the pleadings or on the record as a whole. Accordingly, the Court deferred ruling on the question. After the hearing, Plaintiffs' counsel sent Suburban's counsel an e-mail stating that they "had not resolved the 'proper wording and scope of the issue to be submitted' on the joint/successive tortfeasor issue," and in his view, there had not been "a meeting of the minds."

On July 1, 2011, Suburban filed a Motion to Enforce the Settlement Agreement [Paper No. 55], arguing that the parties had "reached a binding and enforceable settlement agreement on May 31, 2011" and therefore the Court should determine, "as a matter of law," whether Suburban was or was not a joint tortfeasor. Plaintiffs agreed "that a settlement was reached by the parties," but disagreed that the issue could be decided "a matter of law," precluding the Court from making factual findings.

At a hearing held on December 21, 2011, the Court ruled that the parties did have an enforceable settlement agreement and decided it would consider the joint tortfeasor issue on the record as a whole, deferring again its decision of the actual question. At a subsequent hearing, on January 20, 2012, the Court ruled that Suburban was in fact a joint tortfeasor, in effect limiting Suburban's liability to the minimum payment of $650,000. Counsel for both parties thereafter spent several weeks ironing out the language of the release. It was not until March 2, 2012 that Plaintiffs received a $650,000 settlement check.

Insofar as Suburban has now tendered the $650,000 payment, Plaintiffs' Motion to Enforce Settlement [Paper No. 62] is **MOOT**. The sole remaining issue is whether Plaintiffs are also entitled to interest on the $650,000. Plaintiffs say they are; Suburban says they are not.

With respect to pre-judgment interest, the Court looks to applicable state law. *Hitachi Credit America Corp. v. Signet Bank*, 166 F. 3d 614, 633 (4th Cir. 1999) (citing *United States v. Dollar Rent A Car Sys., Inc.*, 712 F.2d 938, 940 (4th Cir. 1983)). In Maryland, there are "three basic rules governing the allowance of pre-judgment interest." *Buxton v. Buxton*, 770 A.2d 152, 165 (Md. 2001). First, pre-judgment interest "is allowable as a matter of right when 'the obligation to pay the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.'" *Id.* (citations omitted). This right to prejudgment interest "is the exception rather than the rule," *Ver Brycke v. Ver* Brycke, 843 A.2d 758, 777 (Md. 2004), and "arises under written contracts to pay money on a day certain, such as bills of exchange or promissory notes, in actions on bonds under contracts providing for the payment of interest, in cases where the money claimed has actually been used by the other party, and in sums

payable under leases as rent." *Buxton*, 770 A.2d at 165.  Second, prejudgment interest is *not* allowed in tort cases where the recovery is not easily susceptible of precise measurement.  *Id.* (citations omitted).  Third, between these two poles, allowance of prejudgment interest "is within the discretion of the trier of fact."  *Id.* (citations omitted).

In the present case, allowance of pre-judgment interest falls under the third rule.  Plaintiffs are not entitled to pre-judgment interest as a matter of right under the first rule.  The settlement agreement is not akin to a promissory note or bill of exchange and did not specify payment on a particular date.  Rather, it provided that $650,000 would be paid to Plaintiffs "in the event" the Court ruled in favor of Suburban "on the joint/successive tortfeasor credit issue."  The fact that Plaintiffs' counsel had "requested" payment of the minimum $650,000 within two weeks of Judge Shuker's May 31, 2011 e-mail does not change the analysis.  Plaintiffs' request was not part of the terms the parties hashed out during the negotiation, and Suburban's counsel's willingness to accommodate the request does not show that the payment date was "certain" and "definite."  The second rule does not apply because the amount Plaintiffs could recover was fixed pursuant to the settlement agreement; it was not difficult to measure.  Accordingly, the determination whether Plaintiffs are entitled to pre-judgment is within the discretion of the trier of fact.

The Court's "exercise of discretion to award prejudgment interest must be based on the equity and justice appearing between the parties and a consideration of all the circumstances."  *Agnew v. State*, 446 A.2d 425, 447 (Md. App. 1982) (citation omitted).  Here, after balancing the relevant factors, the Court concludes that pre-judgment interest should be awarded.  Under the terms of the settlement agreement, Suburban was at all times obligated to pay Plaintiffs a minimum of $650,000.  Regardless of whether the Court might eventually find in favor of Plaintiffs or Suburban on the joint tortfeasor issue, Suburban always owed Plaintiffs that sum.  It is worth noting again that Plaintiffs requested prompt payment of the $650,000 and Suburban's counsel stated that he would try to obtain the funds within two weeks.

While the subsequent dispute over how the joint tortfeasor issue would be presented to the Court arguably cast some doubt on when Suburban's obligation to pay the $650,000 might begin, any such doubt was clearly dispelled on July 1, 2011, when Suburban filed its motion to enforce the settlement agreement.  In its motion, Suburban declared that the parties had "reached a binding and enforceable settlement agreement on May 31, 2011."  Suburban never disavowed the requirement to pay the minimum amount.  Plaintiffs, moreover, agreed in their response "that a settlement was reached by the parties" and also moved to enforce it.  While Suburban suggests that Plaintiffs never once requested payment of the $650,000 between July 1, 2011 and December 21, 2011, when the Court ruled that the settlement agreement was enforceable, there was no obligation on the part of Plaintiffs to reiterate their demand for the money.

The Court rendered its judgment in this case on January 20, 2012, holding that Suburban was a joint rather than successive tortfeasor.  *See* FED. R. CIV. P. 54(a).  The end date for pre-judgment interest, therefore, is January 20, 2012, so the Court will award Plaintiffs pre-judgment interest on the $650,000 from July 1, 2011 to January 20, 2012.

What, then, is the applicable rate?  The Maryland Constitution provides that the legal rate of interest "shall" be six percent per annum, "unless otherwise provided by the General Assembly." Md. Const. Art. III § 57.  Because no statute modifies the six percent rate here, the Court finds that Plaintiffs are entitled to $21,690.55 in pre-judgment interest.[1]

With respect to post-judgment interest, the Court agrees with Suburban that the most it owes Plaintiffs is interest from the date of judgment through the date on which Plaintiffs received the $650,000 payment.  Suburban is also correct that federal law rather than state law governs the calculation of post-judgment interest, *see Hitachi Credit America Corp. v. Signet Bank*, 166 F. 3d 614, 633 (4th Cir. 1999) (citation omitted), and that 28 U.S.C. § 1961 specifies the applicable rate—here .11 percent, with annual compounding.  *Id.* § 1961(a)-(b).  Accordingly, the Court will award Plaintiffs post-judgment interest from January 20, 2012 to March 2, 2012 in the amount of $82.27.

In sum, the Court **GRANTS** Plaintiff's Motion to Enforce Settlement [Paper No. 62] insofar as it awards Plaintiffs $21,690.55 pre-judgment interest and $82.27 post-judgment interest, for a total of $21,772.82.

Despite the informal nature of this ruling, it shall constitute a Final Order of the Court and the Clerk is directed to docket it accordingly.  The Clerk is also directed to **CLOSE** this case.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[1] $650,000 x .06% = $39,000, which divided by 365 = $106.85 per day, and 203 days x $106.85 = $21,690.55.